UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHARI ROSENMAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK INC.,<br><br>　　　　　Defendant. | Case No. 21-CV-02108-LHK<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 17 |

On February 22, 2021, Plaintiff Shari Rosenman ("Plaintiff"), individually and on behalf of all others similarly situated, sued Defendant Facebook, Inc. ("Facebook"), in the California Superior Court for the County of San Mateo for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., and unjust enrichment. ECF No. 1 Exh. B. On March 25, 2021, Facebook removed the instant case to federal court based on federal question jurisdiction. *See* ECF No. 1. Before the Court is Plaintiff's motion to remand the instant case to the California Superior Court for the County of San Mateo. ECF No. 17. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion to remand.

**I.　BACKGROUND**

### A. Factual Background

Plaintiff alleges that Facebook "is by far the biggest social network in the United States." ECF No. 1 Exh. B ("Compl.") ¶ 1. According to Plaintiff, "Ninety-Nine percent of adults in the U.S. that use social media use Facebook." *Id.* ¶ 17. Plaintiff alleges that "Facebook itself boasted in 2011 that 'Facebook is now 95% of all social media.'" *Id.* ¶ 15.

Plaintiff alleges that "Facebook's popularity gives it wide latitude to set the terms for how its users' private information is collected, used, and protected and the privacy protections afforded to its users." *Id.* ¶ 19. Plaintiff alleges that, as a result, "[c]onsumers effectively face a singular choice: either to use Facebook and submit to the quality and stipulations of Facebook's product or forgo all use of the only social network used by most of their friends, family, and acquaintances." *Id.* ¶ 17.

According to Plaintiff, Facebook initially distinguished itself from other social networks on the basis of its privacy practices. *Id.* ¶ 20. Facebook allegedly "tried to backslide on its privacy commitments, but it faced discipline from competitors that it still had not cornered." *Id.* ¶ 21. However, once Facebook overtook its rivals, Facebook allegedly "leveraged its popularity to successfully degrade privacy to levels unsustainable in the earlier market when Facebook and its competition were subject to consumer privacy demands." *Id.* ¶ 20.

Plaintiff alleges that, "[w]ith nearly every privacy policy update, Facebook steadily increased the richness of the user data it allowed itself to collect and retain and expanded what it could do with the data." *Id.* ¶ 28. For example, "by 2011, Facebook's privacy policy allowed enhanced third-party tracking, permitting Facebook to collect data when users visited a site with Facebook features." *Id.* In addition, "[b]y 2012, Facebook had abandoned a previous pledge to anonymize user data received by Facebook's advertising partners and customers within 180 days." *Id.* ¶ 29. Furthermore, "[b]y 2015, Facebook had abandoned its previous promise to collect payment account numbers only with user consent." *Id.* ¶ 30.

Plaintiff alleges that "users exchange their time, attention, and personal data for access to Facebook's services." *Id.* ¶ 38. Plaintiff alleges that, rather than raising prices, Facebook harmed

consumers "by charging them the use of ever-increasing amounts of their personal data to use its platform." *Id.* ¶ 39. According to Plaintiff, "Facebook's conduct has caused consumers to suffer and to continue to suffer substantial economic injury through the degradation of their privacy." *Id.* ¶ 40.

### B. Procedural History

On December 14, 2020, Plaintiff sued Facebook in the California Superior Court for the County of San Mateo for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and unjust enrichment. *See Rosenman v. Facebook*, Case No. 21-CV-00336-LHK, ECF No. 1 Exh. B. Plaintiff's class was defined as "[a]ll persons or entities who maintained a Facebook profile at any time within four years of the date of the filing of this action." *Id.* ¶ 47.

On January 13, 2021, Facebook removed Plaintiff's case to this Court. *See Rosenman v. Facebook*, Case No. 21-CV-00336-LHK, ECF No. 1. Facebook asserted that this Court had jurisdiction based on the Class Action Fairness Act and federal question jurisdiction. *Id.*

On February 9, 2021, this Court granted Facebook's motion to relate *Rosenman v. Facebook* to *Klein v. Facebook*. *See Klein v. Facebook*, Case No. 20-CV-8570-LHK, ECF No. 47. On February 11, 2021, Plaintiff voluntarily dismissed her case without prejudice. *See Rosenman v. Facebook*, Case No. 21-CV-00336-LHK, ECF No. 17.

On February 22, 2021, Plaintiff filed the instant case against Facebook in the California Superior Court for the County of San Mateo for violations of the UCL and unjust enrichment. ECF No. 1 Exh. B. Plaintiff seeks to represent a class of "[a]ll California citizens who, while citizens of the State of California, maintained a Facebook profile at any time within four years of the date of the filing of this action." *Id.* ¶ 50.

On March 25, 2021, Facebook removed the instant case to federal court based on federal question jurisdiction. *See* ECF No. 1. On April 9, 2021, the Court granted Facebook's motion to relate the instant case to *Klein v. Facebook*. *See Klein v. Facebook*, Case No. 20-CV-8570-LHK, ECF No. 47.

On April 26, 2021, Plaintiff filed the instant motion to remand. ECF No. 17 ("Mot."). On May 26, 2021, Facebook filed an opposition. ECF No. 20 ("Opp'n"). On June 25, 2021, Plaintiff filed a reply. ECF No. 21 ("Reply").

## II.   LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

The party seeking removal bears the burden of establishing federal jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

## III.   DISCUSSION

"Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar*, 482 U.S. at 392. Under 28 U.S.C. § 1331, federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Federal question jurisdiction "is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Removal pursuant to Section 1331 is governed by the "well-pleaded complaint rule," which provides that federal question jurisdiction exists only when "a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.

In the instant case, Plaintiff's complaint alleges two state law claims: violations of California's Unfair Competition Law ("UCL") and unjust enrichment. *See* ECF No. 1 Exh. B. Generally, a complaint that asserts only state law claims does not arise under federal law. *Taylor*,

4

481 U.S. at 63.

Federal question jurisdiction will lie over state law claims like Plaintiff's only "in certain cases" where those state law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under *Grable*, a federal court may exercise jurisdiction over a state law claim only if (1) the action necessarily raises a federal issue that is (2) disputed and (3) substantial, and if (4) the court may entertain the case without disturbing the congressionally approved balance of federal and state judicial responsibilities. *Id.* at 314. The party seeking to establish jurisdiction must justify a need for "the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312.

Facebook contends that the instant case meets all four criteria set forth in *Grable*. Opp'n at 5–14. Specifically, Facebook asserts that Plaintiff's claim under the unfair prong of the UCL "necessarily turns on a disputed and substantial question of federal antitrust law—whether Facebook unlawfully obtained and maintained an illegal monopoly." *Id.* at 6. Facebook thus contends that this Court has federal question jurisdiction over Plaintiff's claim under the unfair prong of the UCL and should exercise supplemental jurisdiction over Plaintiff's claim under the fraudulent prong of the UCL and for unjust enrichment. *Id.* at 6 n.4. The Court addresses in turn each of the *Grable* criteria.

### A. Plaintiff's UCL unfair prong claim necessarily raises a federal issue.

First, Plaintiff's UCL unfair prong claim necessarily raises a federal issue. As Facebook acknowledges, Opp'n at 7, it is possible to state a UCL unfair prong claim without raising a federal issue. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "[T]he statutory language referring to 'any unlawful, unfair, *or* fraudulent' practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Comm'ns, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (emphasis in original).

Indeed, a plaintiff may state a UCL unfair prong claim by alleging that the defendant's conduct: (1) "threatens an incipient violation of an antitrust law"; (2) "violates the policy or spirit

5

of one of those laws because its effects are comparable to or the same as a violation of the law"; or (3) "otherwise significantly threatens or harms competition." *Cel-Tech Comm'ns*, 20 Cal. 4th at 187. Under this test, conduct could violate the UCL's unfair prong without constituting a violation of an antitrust law. *See id.* (stating that "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition"); *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("We do not hold that in all circumstances an 'unfair' business act or practice must violate an antitrust law to be actionable under the unfair competition law."). Thus, as Facebook acknowledges, a violation of federal law is not necessary to state a UCL unfair prong claim. *See PeopleBrowsr, Inc. v. Twitter*, No. C-12-6120 EMC, 2013 WL 843032, at *5 (N.D. Cal. Mar. 6, 2013) (concluding that "a violation of the unfair prong of the UCL does not necessarily require establishing a violation of the Sherman Act").

However, where a plaintiff's UCL unfair prong claim relies on a defendant's alleged abuse of its monopoly position, that claim requires establishing a violation of federal antitrust law. *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. 15-CV-09996-BRO, 2016 WL 1192642, at *5 (C.D. Cal. Mar. 28, 2016) (denying motion to remand where "Plaintiff's UCL cause of action relies on Defendants' alleged 'abuse of its monopoly position' and charging 'supra-competitive prices'"). The plaintiff must establish a violation of federal antitrust law because "[n]o California statute deals expressly with monopolization or attempted monopolization." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), *modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987). Indeed, California's antitrust statute, the Cartwright Act, "contains no provision parallel to the Sherman Act's prohibition against monopolization, and the Cartwright Act applies only to a 'combination' involving 'two or more persons', not to *unilateral* conduct." *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011) (citations omitted). Thus, UCL unfair prong claims that rely on a defendant's unilateral abuse of its monopoly position require establishing a violation of

6

federal antitrust law.

For example, in *National Football Leagues Sunday Ticket Antitrust Litigation*, a plaintiff alleged a UCL unfair prong claim based on allegations that "Defendants abuse their monopoly position, leaving Plaintiff . . . with no available market alternatives" and that Defendants "maliciously and oppressively abuse[d] that position by imposing unreasonably high prices." 2016 WL 1192642 at *4. The Central District of California court concluded that the plaintiff's UCL unfair prong claim necessarily raised an issue of federal law because "Defendants' monopolistic conduct, as alleged by Plaintiff in his Complaint, is only actionable under Section 2 of the Sherman Act, particularly where '[n]o California statute deals expressly with monopolization.'" *Id.* (quoting *Dimidowich*, 803 F.2d at 1478).

In the instant case, Plaintiff's UCL unfair prong claim similarly alleges that Facebook abused its monopoly position to force consumers to accept worse privacy settings. Compl. ¶¶ 1, 20, 23. Indeed, in the first section of Plaintiff's substantive allegations, which is entitled "Facebook's Popularity," Plaintiff alleges that: (1) "Facebook is by far the biggest social network in the United States"; (2) "Facebook itself boasted in 2011 that 'Facebook is now 95% of all social media,'"; and (3) "Facebook is the reigning platform, not only in the lives of Americans, but in the lives of 2.2 billion people worldwide." *Id.* ¶¶ 14–17.

Plaintiff alleges that Facebook's popularity allowed Facebook to force consumers to accept worse privacy settings. *Id.* ¶¶ 1, 20, 23. Specifically, Plaintiff alleges that, in the early days of social media, when Facebook had competition, Facebook was "subject to consumer privacy demands." *Id.* ¶ 20; *see also id.* ¶ 34 (alleging that, when Facebook was competing with Google+, Facebook could not degrade its privacy practices further). Facebook allegedly "tried to backslide on its privacy commitments, but it faced discipline from competitors that it still had not cornered." *Id.* ¶ 21.

Plaintiff alleges that, once Facebook overtook its rivals, Facebook allegedly "leveraged its popularity to successfully degrade privacy to levels unsustainable in the earlier market when Facebook and its competition were subject to consumer privacy demands." *Id.* ¶ 20. According to

Plaintiff, "Facebook's popularity gives it wide latitude to set the terms for how its users' private information is collected, used, and protected and the privacy protections afforded to its users." *Id.* ¶ 19. Plaintiff alleges that, as a result, "[c]onsumers effectively face a singular choice: either to use Facebook and submit to the quality and stipulations of Facebook's product or forgo all use of the only social network used by most of their friends, family, and acquaintances." *Id.* ¶ 17; *see also id.* ¶ 23 (alleging that Facebook's tracking of users "is just one of many ways in which Facebook rolled back privacy protections once it sensed that users couldn't take their business elsewhere").

In addition, Plaintiff alleges that Facebook charged consumers supra-competitive prices in the form of increased personal data. Plaintiff alleges that, although Facebook is free, "users exchange their time, attention, and personal data for access to Facebook's services." *Id.* ¶ 38. Plaintiff alleges that, rather than raising prices, Facebook harmed consumers "by charging them the use of ever-increasing amounts of their personal data to use its platform." *Id.* ¶ 39.

Considering these allegations, the Court concludes that, like the claim brought by the plaintiff in *National Football Leagues Sunday Ticket Antitrust Litigation*, the UCL unfair prong claim that Plaintiff has pled relies on Facebook's alleged abuse of its monopoly position. Facebook's alleged unilateral monopolistic conduct is only actionable under Section 2 of the Sherman Act. *See Dimidowich*, 803 F.2d at 1478 (explaining that the Cartwright Act "does not address unilateral conduct"); *Flagship Theatres*, 198 Cal. App. 4th at 1386 (2011) (explaining that the Cartwright Act, "contains no provision parallel to the Sherman Act's prohibition against monopolization, and the Cartwright Act applies only to a 'combination' involving 'two or more persons', not to unilateral conduct."). Moreover, Plaintiff does not allege in her Complaint that Facebook's conduct violated California-specific constitutional, statutory, or regulatory provisions. Thus, "Plaintiff's unfair competition cause of action will require a Court to interpret and apply federal antitrust statutes, case law, and policies in order to determine whether [Facebook's] conduct constitutes unfair competition under the UCL." *Central Valley Med. Grp., Inc. v. Independent Physician Assoc. Med. Grp.*, 19-CV-00404-LJO-SKO, 2019 WL 2491328, at *3 (E.D. Cal. June 14, 2019) (denying motion to remand and concluding that UCL unfair prong claim

necessarily raised a federal issue).

Accordingly, Plaintiff's UCL unfair prong claim necessarily raises a federal issue. *See In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *5 (concluding that plaintiff's UCL unfair prong claim necessarily raised a federal issue where plaintiff alleged that defendant abused its monopoly position); *see also Central Valley Med. Grp., Inc.*, 2019 WL 2491328, at *3 (concluding that plaintiff's UCL unfair prong claim necessarily raised a federal issue where "Plaintiff's sole theory of UCL unfair competition liability is that [defendant's] conduct violates policies tethered to federal antitrust laws" and "Plaintiff does not explicitly plead in its complaint, much less argue in its opposition, that [defendant's] alleged conduct violates policies tethered to California-specific constitutional, statutory, or regulatory provisions").[1] Therefore, the first *Grable* criteria is satisfied.

### B. The federal issue is disputed.

As Plaintiff concedes, the federal issue in the instant case is disputed. As explained above, *supra* Section III(A), Plaintiff alleges that Facebook acquired popularity and then "leveraged its popularity to successfully degrade privacy to levels unsustainable in the earlier market when Facebook and its competition were subject to consumer privacy demands." Compl. ¶ 20. Facebook denies all of these claims, including that Facebook created an unlawful monopoly and abused its monopoly power to degrade its data practices and harm consumers. Opp'n at 13. Accordingly, the federal issue is disputed. *See Gunn v. Minton*, 568 U.S. 251, 259 (2013) (holding that the federal issue was actually disputed where the defendants denied the plaintiff's allegations on the federal issue). Thus, the second *Grable* criteria is satisfied.

### C. The federal issue is substantial.

---

[1] In arguing to the contrary, Plaintiff relies on *Lippitt v. Raymond James Fin. Servs., Inc.*. 340 F.3d 1033 (9th Cir. 2002). However, *Lippitt* is distinguishable because the Ninth Circuit concluded that "a state court need not inquire into [federal] regulations, or even refer to federal law" to adjudicate the securities claim at issue in that case. *Id.* at 1045. For the reasons explained above, the instant cases requires application of federal antitrust laws. *See California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 n.7 (9th Cir. 2004) (distinguishing *Lippitt* in case where "the reference to and necessity of relying upon federal law is unavoidable").

In addition, the federal issue in the instant case is substantial. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The United States Supreme Court and the Ninth Circuit have emphasized the importance of the Sherman Act to the federal system. The United States Supreme Court has emphasized "the importance of the [Sherman] Act's procompetition policy" and has stated that "[t]he federal interest in enforcing the national policy in favor of competition is both familiar and substantial." *Cal. Retail Liquor Dealers, Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110–11 (1980). Similarly, the Ninth Circuit has held that "[t]he federal interest embodied in the Sherman Act is well-recognized and substantial." *Miller v. Hedlund*, 813 F.2d 1344, 1352 (9th Cir. 1987); *accord Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 903 (9th Cir. 2008) (acknowledging the "federal interest in promoting competition under the Sherman Act").

Moreover, resolution of the antitrust questions presented in this case could affect other cases being brought by consumers, advertisers, and federal agencies in federal court against Facebook under the Sherman Act. *See, e.g.*, *Klein v. Facebook*, No. 20-CV-08570-LHK, ECF Nos. 86, 87 (consumer and advertiser class actions, alleging that Facebook has offered worse data practices because Facebook does not face competition); *FTC v. Facebook*, No. 20-CV-03590-JEB (case brought by FTC against Facebook for abusing its monopoly position). The United States Supreme Court and the Ninth Circuit have stated that a federal issue is substantial where "a ruling on the issue is both dispositive of the case and would be controlling in numerous other cases." *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020); *see Empire Healthchoice Assur. v. McVeigh*, 547 U.S. 677, 700 (2006) (stating that an issue was substantial where "its resolution was both dispositive of the case and would be controlling in numerous other cases"). Thus, the Court concludes that the federal issue presented in the instant case is substantial. *See In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *5 (concluding that the federal issue presented by plaintiff's allegations that defendant had abused its monopoly position were substantial). Thus, the third *Grable* criteria is satisfied.

**D. The Court may entertain the instant case without disturbing the congressionally**

**approved balance of federal and state judicial responsibilities.**

Finally, the Court may entertain the instant case without disturbing the congressionally approved balance of federal and state judicial responsibilities. Under federal law, "federal antitrust claims are within the exclusive jurisdiction of the federal courts." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985). Thus, Congress has determined that federal courts should decide federal antitrust claims. *See Midcal Aluminum*, 445 U.S. at 111 (stating that Congress "'exercis[ed] all the power it possessed' under the Commerce Clause when it approved the Sherman Act") (quotation omitted). Accordingly, this Court may entertain the instant case without disturbing the congressionally approved balance of federal and state judicial responsibilities, and the fourth *Grable* criteria is satisfied.

In sum, Plaintiff's UCL unfair prong claim satisfies all four criteria set forth in *Grable*. Accordingly, this Court has federal question jurisdiction over Plaintiff's claim under the unfair prong of the UCL. *See Grable*, 545 U.S. at 312 (holding that federal question jurisdiction lies over state claims when four *Grable* criteria are met). This Court thus exercises federal question jurisdiction over Plaintiff's UCL unfair prong claim. Additionally, this Court exercises supplemental jurisdiction over Plaintiff's claims under the fraudulent prong of the UCL and for unjust enrichment because these claims, which also concern Facebook's alleged conduct in degrading its data practices, arise from "the same case or controversy" as Plaintiff's UCL unfair prong claim. 28 U.S.C. § 1367; *see County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) ("If only one of several state claims satisfies the requirements for removal on federal-question grounds, then any other purely state claims in the same complaint may also be determined by the federal court under its supplemental jurisdiction."). Thus, the Court DENIES Plaintiff's motion to remand.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: August 27, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge